UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

GEORGE WILLIAMS,                                          **DECISION AND ORDER**

                             Plaintiff,                    13-CV-00974-WMS-JJM

v.

KEITH SWACK, SEAN WARNER,
MATTHEW RADDEMACHER and
ERIK HIBSCH,

                             Defendants.
_____

        This action has been referred to me by District Judge William M. Skretny for supervision of pretrial proceedings [40].[1] Before me is the motion of plaintiff George Williams to compel discovery [80]. Oral argument was held on March 28, 2016 [96], and thereafter I requested defendants to submit certain *in camera* materials and permitted the parties to submit supplemental briefs. March 29, 2016 Text Order [97]. For the following reasons, the portion of plaintiff's motion to compel seeking responses to his First Requests for Production of Documents is granted in part and denied in part, and I defer my determination of the remaining portions of the motion.

**BACKGROUND**

        Plaintiff commenced this action in State of New York Supreme Court, Kings County, on January 17, 2012, seeking damages under 42 U.S.C. §1983 for an alleged assault by defendants, corrections officers at the Attica Correctional facility, on August 9, 2011. Summons with Notice [1], p. 16 of 28. Defendants were also indicted in Wyoming County Court for this alleged conduct in December 2011. Defendants' Joint Response [92] ¶7.

---

[1]     Bracketed references are to the CM/ECF docket entries.

On March 29, 2012 defendants removed the civil action to the United States District Court for the Eastern District of New York [1]. On June 5, 2012, Magistrate Judge Joan Azrack stayed all discovery (other than medical authorizations) pending resolution of the criminal proceedings against defendants [10]. The initial Indictment against defendants was dismissed in August 2012 because of a violation of Kastigar v. United States, 406 U.S. 441(1972) in the grand jury presentment (defendants' Joint Response [92], ¶7), but defendants were re-indicted in January 2013. Id., ¶9.

The civil action was transferred to this District on September 26, 2013 [39], and remained stayed by agreement of the parties [44, 47, 50, 51, 54]. On March 2, 2015 defendants Keith Swack, Matthew Raddemacher and Sean Warner pled guilty to a charge of official misconduct, a Class A misdemeanor under New York Penal Law §195.00(1), were sentenced to a conditional discharge, and resigned their positions as correctional officers. Defendants' Joint Response [92] ¶6; Meyers Buth Affidavit [57], ¶15.

Shortly thereafter, defendants moved to continue the stay of the civil action pending the conclusion of a related federal investigation. Meyers Buth Affidavit [57], ¶44. By Decision and Order dated May 12, 2015 [62], I denied defendants' motion for continuation of the stay, without prejudice to their right to seek a further stay in the event that criminal charges are instituted against them [62]. However, the parties agreed to an additional stay of proceedings until August 28, 2015, in order to give counsel for defendants Swack, Warner and Raddemacher the opportunity to contest the New York Attorney General's decision to discontinue payment of their defense costs. See June 9, 2015 Text Order [66]; July 24, 2015 Text Order [68]; August 28, 2015 Minute Entry [70]. During this additional stay, the parties agreed that defendants would serve plaintiff with their discovery responses. June 9, 2015 Text Order [66]; July 24, 2015 Text

Order [68]. Consistent with that order, on or about July 28, 2015 defendants served their Joint Response to plaintiff's First Requests for Production of Documents dated December 21, 2012 ("Joint Discovery Response") [80-3].[2] However, no responses to plaintiff's First Sets of Interrogatories were served at that time. Sivin Declaration [80-1], ¶3. At the conclusion of the additional stay, a Case Management Order [71] was entered on August 28, 2015, requiring the completion of fact discovery by May 31, 2016. Id., ¶7.

On February 9, 2016, plaintiff filed this motion seeking to compel defendants to answer his First Sets of Interrogatories and to produce certain documents they withheld in their Joint Discovery Response [80]. He also seeks his attorney's fees incurred in connection with the motion. Id. The document production in dispute includes, transcripts of defendant Erik Hibsch's grand jury and arbitration testimony, transcripts of defendants' question and answer sessions conducted by the Inspector General of the New York State Department of Corrections and Community Supervision ("DOCCS"), documentation of other grievances and lawsuits filed against defendants, and defendants' Tier III disciplinary tapes. *See* Sivin Reply Declaration [93], ¶3.

Coupled with their opposition to plaintiff's motion,[3] defendants cross-moved for a stay ([92], ¶¶28-35) based upon recent unsuccessful efforts by the United States Attorney's Office before the Wyoming County Court to unseal the grand jury minutes that resulted in the initial Indictment . Defendants' Joint Response [92], ¶¶32-34. At the March 28, 2016 oral argument, I denied defendants' cross-motion for a stay, granted plaintiff's motion to the extent that it sought to compel responses to his First Sets of Interrogatories, and directed defendants to

---

[2]   Individual demands were made to each of the defendants [80-2].

[3]   A "Joint Response" in opposition to plaintiff's motion to compel was filed by defendants Swack, Warner and Raddemacher [92], and a separate opposition was filed by defendant Hibsch [91].

provide "complete answers . . . subject to any applicable Fifth Amendment privilege". March 29, 2016 Text Order [97]. To assist me, if necessary, in resolving the remaining portions of plaintiff's motion, I directed defendants to provide me with "transcripts of defendant Hibsch's arbitration testimony, the question and answer session before [DOCCS], and defendants' state grand jury testimony for my *in camera* review",[4] and permitted the parties to "file supplemental briefs addressing whether the material produced for my *in camera* review is privileged". Id.[5] I also stated that if I ordered any of the *in camera* materials to be produced, that I would stay my decision to provide defendants with an opportunity to seek review by Judge Skretny. Id.

        I further directed that copies of defendants' interrogatory responses be provided to me to address whether the Fifth Amendment privilege properly applies to a particular interrogatory and informed the parties that pending resolution of plaintiff's motion to compel, including the sufficiency of defendants' interrogatory responses, I would reserve decision on plaintiff's request for attorney's fees. Id. While I have received the interrogatory responses of defendant Warner, the interrogatory responses of the other defendants have not been submitted.[6]

---

[4]    It appears that defendant Hibsch is the only defendant that gave grand jury testimony that is the subject of this motion.

[5]    As discussed below, I have deferred any *in camera* review of defendant Hibsch's grand jury testimony and concluded that it was unnecessary for me to conduct a review of the remaining *in camera* materials to resolve the motion.

[6]    Although Captioned "Defendant's Response to Plaintiff's First Set of Interrogatories *to Defendant Warner*" (emphasis added), the response states that it is also "on behalf of" defendants Swack and Raddemacher.

## ANALYSIS

### A. Plaintiff's Motion to Compel

#### 1. Plaintiff's First Requests for Production of Documents

##### a. Other Grievances and Lawsuits

Plaintiff's First Requests for Production of Documents seek production of "all documents, electronically stored information, and other tangible things concerning any of the grievances [and lawsuits] identified in response to [plaintiff's First Sets of Interrogatories]". *See, e.g.*, Plaintiff's First Request for Production of Documents to Defendant Warner [80-2], pp. 8-10 of 22, ¶¶1 and 2. Defendants responded that "[d]ocuments responsive to [the] demand [for grievances] were previously disclosed [in defendants' mandatory disclosures] as Bates #0001-1434", and that they are not in possession of any other responsive materials. Defendants' Joint Discovery Response [80-3], pp. 2-3 of 8. Plaintiff counters - and defendants do not dispute - that defendants' mandatory disclosures bearing Bates #0001-1434 do not include any grievances against defendants. Sivin Declaration [80-1], ¶4.

In response to plaintiff's motion to compel, defendants identify certain federal civil rights suits in which they are named defendants. *See* Defendants' Joint Response [92], ¶15. However, they argue that all other responsive documents are in the possession of DOCCS. Plaintiff "acknowledges that, to the extent they are unable to access certain documents now that they no longer are employed by DOCCS, defendants cannot be compelled to produce those documents". Sivin Reply Declaration [93], p. 3 of 6. However, he argues that "this does not relieve defendants of their obligation to comply with plaintiff's discovery demands by identifying prior grievances and lawsuits and providing any supporting documentation . . . that they have in their possession". Id. at pp. 3-4 of 6. I agree. Therefore, to the extent that they

have not already done so, defendants shall identify prior grievances and lawsuits that they are aware of and provide any supporting documentation, or affirmatively indicate that they lack knowledge and possession of any responsive materials.

### b. Tier III Hearing Tapes

Plaintiff's First Requests for Production of Documents sought "[a]ll statements, recordings . . . or writings purportedly made by or taken of plaintiff concerning any of the issues in this lawsuit". *See, e.g.*, Plaintiff's First Request for Production of Documents to Defendant Warner [80-2], p. 9. of 22, ¶5. In response to that request, defendants acknowledged being in possession of Tier III hearing audio cassettes, but declined to produce those recordings, since they were "subject to expungement by [DOCCS] and a sealing order". Defendants' Joint Discovery Response [80-3], p. 4 of 8. In opposition to plaintiff's motion, defendants further explain that in response to a judicial subpoena *duces tecum* that defendants had served on DOCCS in 2012, DOCCS advised the Wyoming County Court that the Tier III hearing records were confidential because they had been expunged. Defendants' Joint Response [92], ¶22.

However, with the consent of the parties to defendants' criminal action, the Wyoming County Court entered an order requiring the production of the tapes to the Wyoming County District Attorney's Office and defendants "on the condition that their use be limited to the criminal proceeding". Id. Although that criminal case is no longer pending, defendants argue that they are bound by the Wyoming County Court's order "not to disseminate the tapes or use them in connection with any other proceeding". Id., ¶23. Defendants do not dispute the relevance of these tapes or make any other objections to their production.

As plaintiff notes, defendants have not produced the Wyoming County Court order governing the production of the Tier III hearing tapes. Sivin Reply Declaration [93], p. 4 of 6.  Nor is it evident from their description of that order whether it prohibited the mere use of the Tier III hearing tapes or also their dissemination.  Recognizing that "[w]hen a party seeks relevant discovery, the party resisting discovery bears the burden of establishing [by competent evidence] the factual basis for withholding the requested discovery". Abu-Nassar v. Elders Futures Inc., 1991 WL 45062, *15 (S.D.N.Y. 1991), I conclude that defendants have not met their burden.  Therefore, this portion of plaintiff's motion is granted.

### c.  Defendants' Question and Answer Sessions

Defendants allege that they were subjected to mandatory questions and answer sessions by DOCCS' Inspector General and labor counsel, which were "compelled under the [their] contract of employment".  Defendants' Joint Response [92], ¶24.  In opposing the production of these transcripts, defendants assert a Fifth Amendment privilege based upon the pending federal criminal investigation, and argue that the act of producing the transcripts of their compelled statements are covered by the privilege and cannot be compelled.  Id., ¶25.

The Fifth Amendment privilege against self-incrimination "protects against any disclosures that the witness reasonably believes could be used in a criminal prosecution or could lead to other evidence that might be so used." Kastigar, 406 U.S. at 445. "It can be asserted in any proceeding, civil or criminal". Id. at 444.  However, "the privilege will not be upheld merely because the person asserting it believes that such assertion is reasonable".  G.D. Searle & Co. v. Interstate Drug Exchange, Inc., 117 F.R.D. 495, 500 (E.D.N.Y. 1987).  "It is for the court to say whether [assertion of the privilege] is justified", Hoffman v. United States, 341 U.S. 479, 486

(1951), and the party asserting the privilege bears the burden of establishing its applicability. G.D. Searle & Co., 117 F.R.D. at 500.

As an extension of the Fifth Amendment privilege against self-incrimination, "[p]ursuant to Garrity v. New Jersey, 385 U.S. 493 (1967), and Kastigar, the government may not use in a criminal prosecution any statements that were made by an employee during an internal investigation and subject to a grant of immunity, nor any information derived from such statements." United States v. Pendergrass, __ Fed. Appx.__, 2016 WL 1696547, *2 (2d Cir. 2016) (Summary Order). *See* United States v. Moten, 551 F.3d 763, 766 (8th Cir. 2008) ("[t]he Fifth Amendment privilege against self-incrimination extends to statements a government employee is compelled to make under the threat of removal from public office . . . . The privilege does not bar the government from compelling a public official to answer. Rather, the Constitution is violated only when the compelled statement, or the fruit of that statement, is used against the officer in a subsequent criminal proceeding"). Here, it is undisputed that defendants' statements during their question and answer sessions, at which they were advised that the failure to answer questions would subject them to termination and that their answers could not be used in any subsequent criminal proceedings, constitute Garrity statements. Hon. Michael Griffin's August 24, 2013 Decision and Order. [99-1], p. 3.[7]

However, as plaintiff argues, "there is no Fifth Amendment privilege that protects the *use* of Garrity statements in subsequent *civil* proceedings". Plaintiff's post-argument letter brief [98], p. 1 of 3 (emphasis added). The "Fifth Amendment privilege is not implicated by disclosing [Garrity] statements in [a] civil action". Frierson v. City of Terrell ("Frierson II),

---

[7] The initial Indictment was dismissed as a result of a Kastigar violation because defendants' Garrity statements were referenced in an affidavit that was read to the grand jury. Hon. Michael Griffin's August 24, 2013 Decision and Order. [99-1], p. 3.

2003 WL 21955863, *4 (N.D. Tex. 2003). Instead, the "Garrity protection assures the speaker that the prosecution will not be allowed to improperly use his protected statements in a criminal proceeding, *even if they possess them*". Id. (emphasis in original). See Collins v. Bauer, 2012 WL 253881, *4 (N.D. Tex. 2012) (same). Therefore, "[i]ncriminating testimony compelled by a grant of immunity or by other means remains available for use in related civil cases, even if the declarant reasonably asserts a Fifth Amendment privilege". Yarbro v. City of Pontiac, 2012 U.S. Dist. Lexis 6025,*12 (E.D. Mich. 2012).

Since "[i]t is well established that the privilege [against self-incrimination] protects against real dangers, not remote and speculative possibilities", Zicarelli v. New Jersey State Commission of Investigation, 406 U.S. 472, 478 (1972), "[t]he time for protection will come when, if ever, the government attempts to use the information against the defendant". In re Grand Jury Subpoenas Dated December 7 & 8, Issued to Bob Stover, Chief of Albuquerque Police Department v. United States, 40 F.3d 1096, 1103 (10th Cir. 1994). However, at this time, I am "not willing to assume that the government will make such use, or if it does, that a court will allow it to do so". Id.

In attempting to distinguish the cases relied upon by plaintiff, defendant Hibsch argues that plaintiff's cases address instances where the disclosure was compelled from a public employer, rather than from the employee responsible for the statement. Although defendant Hibsch describes this distinction as being "significant", the only cases he cites as recognizing such a distinction are Frierson v. City of Terrell ("Frierson I"), 2003 WL 21355969 (N.D. Tex. 2003) and Frierson II. Defendant Hibsch's post-argument letter brief [99], pp. 2-3. In Frierson I, the court ordered the municipal employer defendant to produce certain Garrity statements of its co-defendant employee, but denied the plaintiff's motion to compel production directly from

the employee. Frierson I, 2003WL 21355969 at *4-8; Frierson II, 2003 WL 21955863 at *4. While Frierson I drew an apparent distinction between the documents in the possession of the municipal employer and those in possession of the employee, the import of that distinction is not evident, since the documents in the possession of the employee that the court declined to compel were not specifically identified and the court explained that at least some of the production from the employee was being denied because it "consist[s] of identical copies of documents already ordered to be produced by the [municipal employer]". Frierson I, 2003 WL 21355969 at *8.

In arguing that the production of Garrity statements from them (as opposed to DOCCS) may implicate the Fifth Amendment privilege, defendants contend that "the act of producing the transcripts . . . is covered by the privilege and cannot be compelled". Defendants' Joint Response [92], ¶25 (*citing* United States v. Doe, 465 U.S. 605 (1984)). However, "even if documents contain incriminating information, requiring a person to produce them does not implicate the Fifth Amendment unless the act of production is itself testimonial in nature and incriminating to the person making the disclosure". Madanes v. Madanes, 186 F.R.D. 279, 284 (S.D.N.Y. 1999). Defendants make no attempt to demonstrate why the act of production here would itself be testimonial and incriminating.

While these transcripts may be obtainable from DOCCS (Hibsch's Response [91], p. 3 of 4), "merely because an item may be available from another source is not a proper objection to discovery". Adelman v. Boy Scouts of America, 276 F.R.D. 681, 699 n. 18 (S.D. Fla. 2011). *See* Villari v. Terminix International, Inc., 1988 WL 35905, *2 (E.D. Pa. 1988) ("Although the [discovery] may well be available from another source . . . the fact that a relevant and non-privileged document sought in discovery may be available elsewhere does not constitute a legitimate objection to its production"). It is only where "the discovery sought . . .

can be obtained from some other source that is more convenient, less burdensome, or less expensive", that the court must limit such discovery. Fed. R. Civ. P. ("Rule") 26(b)(2)(C)(i). However, defendants have not attempted to establish that the discovery plaintiff seeks is more easily obtainable from DOCCS, a non-party. Therefore, this portion of plaintiff's motion is granted.

### d. Defendant Hibsch's Arbitration Testimony

Defendant Hibsch concedes that he is in possession of his testimony at his labor arbitration hearing (defendant Hibsch's Response [91], pp. 2-3 of 4), but argues that it is subject to a Fifth Amendment privilege because "[t]hat testimony was compelled as it was needed to save his job". Defendant Hibsch's post-argument letter brief [99], p. 2. Since that argument mirrors the argument raised in opposition to the production of the transcripts of defendants' question and answer sessions, I grant this portion of plaintiff's motion for the same reasons.

### e. Defendant Hibsch's Grand Jury Testimony

Defendant Hibsch acknowledges that he is in possession of the transcript of his immunized testimony before the Wyoming County Court grand jury (defendant Hibsch's Response [91], pp. 2-3 of 4), but opposes its production based upon his assertion of the Fifth Amendment privilege. Defendant Hibsch's post-argument letter brief [99], p. 1. He also notes that plaintiff has not attempted to first obtain access to his grand jury testimony from the Wyoming County Court. Id., p. 2.

Plaintiff responds that the mere production of the transcript is not protected by the Fifth Amendment privilege. Plaintiff's post-argument letter brief [98], p. 2-3 of 3. He further argues that defendant Hibsch's possession of the grand jury testimony undercuts any

presumption of grand jury secrecy, and that even if the presumption of secrecy remains, there is a particularized need for plaintiff to have access to that testimony. Id.

Standing alone, defendant Hibsch's possession of the transcript of his grand jury testimony does not undermine the presumption of grand jury secrecy. *See* Gruman Aerospace Corporation v. Titanium Metals Corporation of America, 554 F.Supp. 771, 776 (E.D.N.Y. 1982) ("the bare allegation that some of the defendants . . . have access to grand jury transcripts . . . will not support plaintiffs' claim [for disclosure]" ); Halperin v. Berlandi, 114 F.R.D. 8, 14 (D. Mass. 1986) ("Merely citing access by an opposing party does not demonstrate particularized need . . . but the need for access does become more particularized and compelling when it becomes evident that the transcripts are essential both to assure the accuracy of testimony at trial and to equalize the access to relevant facts which each side possesses"). Since there continues to be a presumption of grand jury secrecy, the Wyoming County Court, which supervised the grand jury proceeding, is in the best position to determine the continuing need for grand jury secrecy in the first instance. *See* Douglas Oil Co. of California v. Petrol Stops Northwest, 441 U.S. 211, 225 (1979) ("those who seek grand jury transcripts have little choice other than to file a request with the court that supervised the grand jury, as it is the only court with control over the transcripts"); Rechtschaffer v. City of New York, 2009 WL 773351, at *3 (S.D.N.Y. 2009) ("[w]here a party is seeking disclosure or state grand jury testimony for use in federal litigation, that party is generally required to make the application to the state court in the first instance").

Therefore, this portion of the motion is denied, without prejudice to a renewed motion following plaintiff's application to the Wyoming County Court for determination of

whether there is a need for continued grand jury secrecy.[8] Any production to plaintiff will be deferred pending my determination of defendant Hibsch's Fifth Amendment privilege objection in a renewed motion to compel.

### 2. The Sufficiency of Defendants' Interrogatory Responses and Plaintiff's Request for Attorney's Fees

As discussed above, at the March 28, 2016 oral argument I granted plaintiff's motion to the extent it sought to compel responses to his First Sets of Interrogatories and directed defendants to provide "complete answers to plaintiff's First Sets of Interrogatories, subject to any Fifth Amendment privilege". March 29, 2016 Text Order [97]. I also stated that pending resolution of plaintiff's motion to compel, including the sufficiency of defendants' interrogatory responses, I would reserve decision on plaintiff's request for attorney's fees. March 29, 2016 Text Order [97]. Although all defendants were directed to provide me with their interrogatory responses (id.), only defendant Warner has done so, and he asserts no Fifth Amendment privilege in response to plaintiff's First Set of Interrogatories directed to him. Without the benefit of the remaining defendants' interrogatory responses, I am unable to determine the propriety of any Fifth Amendment privilege asserted. Therefore, defendants Hibsch, Raddemacher, and Swack shall submit their interrogatory responses to me by July 8, 2016.

---

[8] Even if the Wyoming County Court determines that there is a continued need for grand jury secrecy, plaintiff may renew his motion before me. See Waterman v. City of New York, 1998 WL 23219, *1 (S.D.N.Y.1998).

**B.     Defendant Hibsch's Request for a Protective Order**

For the first time in his post-argument submission, defendant Hibsch argues that "as a necessary prerequisite to the disclosure of any of the items . . . that plaintiff stipulate to the issuance of a protective order". Defendant Hibsch's post-argument letter brief [99], pp. 4-5. "[B]ecause *all* parties - those who invoke the Fifth Amendment and those who oppose them - should be afforded every reasonable opportunity to litigate a civil case fully and because exercise of Fifth Amendment rights should not be made unnecessarily costly . . . courts, upon an appropriate motion, should seek out those ways that further the goal of permitting as much testimony as possible to be presented in the civil litigation, despite the assertion of the privilege. Thus, if there is a timely request made to the court, the court should explore all possible measures in order to select that means which strikes a fair balance and accommodates both parties." United States v. Certain Real Property and Premises Known as 4003-4005 5th Ave., Brooklyn, N.Y., 55 F.3d 78, 83-84 (2d Cir. 1995) (emphasis in original). One means of accommodating the conflicting needs of the parties is by the use of a protective order "shielding discovery from disclosure to third parties". Madanes, 186 F.R.D. at 287.[9]

Recognizing "the harsh consequences of disclosure of incriminating information" (id. at 288) and that these concerns will likely continue during the discovery phase of this case, use of a protective order may be warranted. Since defendants have not moved for this relief and plaintiff has not had an opportunity to address this issue, the parties shall confer, and if they are unable to reach agreement on the terms of a protective order, defendants may file an appropriate motion by July 15, 2016.

---

[9]     Similar protective orders have also been used, where as here, a party seeks grand jury testimony. *See* Woodruff v. Thornsbury, 2014 WL 5450236, *5 (S.D.W.V. 2014).

## CONCLUSION

For these reasons, plaintiff's motion to compel [30] is denied, without prejudice, to the extent that it seeks production of defendant Hibsch's grand jury testimony, but is otherwise granted to the extent that it seeks to compel responses to his First Requests for Production of Documents. The effective date of that portion of my decision granting plaintiff's motion to compel is stayed until July 8, 2016, to provide defendants with an opportunity to appeal my decision and seek a further stay from Judge Skretny.

By July 8, 2016 defendants Hibsch, Warner, and Raddemacher shall provide me with copies of their interrogatory responses so that I may determine the remaining portions of plaintiff's motion to compel. The parties shall also confer concern in an effort reach agreement on the terms of a protective order, and if they are unable to reach agreement, defendants may file an appropriate motion by July 15, 2016.

**SO ORDERED**.

Dated:   June 29, 2016

>                     /s/ Jeremiah J. McCarthy
>                     Jeremiah J. McCarthy
>                     United States Magistrate Judge